UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NAL, INC., : 3:14cv1132 (WWE)
    Plaintiff, :
V. :
     :
HOUGHTON MIFFLIN HARCOURT :
PUBLISHING COMPANY, :
    Defendant. :

## RULING ON MOTION TO DISMISS

This action stems from defendant Houghton Mifflin Harcourt Publishing Company's ("HMH") alleged under payment and failure to pay royalties to plaintiff NAL, Inc. in connection with plaintiff's Larson's *Saxon Math* program. Specifically, plaintiff brings claims of breach of contract, breach of common law duty of good faith and fair dealing, and breach of implied obligation to devote reasonable efforts to promote Larson's *Saxon Math* (count I); breach of contract based on constructive termination of the Publishing Agreements (count II); breach of the Publishing Agreements as amended by the 2012 Amendment (count III); failure to pay royalties in breach of the Publishing Agreements (count IV); violation of the Connecticut Unfair Trade Practices Act ("CUTPA") (counts V, VI, VII); and declaratory judgment (counts VIII and IX).

Defendant has filed a motion to dismiss the complaint in its entirety. For the following reasons, the motion will be denied.

## FACTUAL BACKGROUND

For purposes of this motion, the Court assumes that all of the facts alleged are true. The Court also incorporates herein facts that are reflected in the exhibits attached to the complaint.

1

Plaintiff NAL is the assignee of Nancy A. Larson's rights, title and interest in the elementary age math programs known as Larson's *Saxon Math*.  From 1991 to 2003, Larson's *Saxon Math* was published by Saxon Publishing Inc. and was among the best-selling elementary school mathematics programs in the United States.  After Harcourt Achieve acquired Saxon, sales of *Saxon Math* reached an all time high in 2006 of more than $44 million annually, yielding royalty payments to NAL in excess of $2.1 million.

In 2007, HMH acquired Harcourt and became the exclusive publisher of Larson's *Saxon Math*.   HMH has refused to devote commercially reasonable efforts to promote the program in favor of its other competing math programs.  HMH's efforts to destroy the program's competitive viability continues to the present day.

The Publishing Agreements between the parties provide that HMH "may discontinue the publication and manufacture of the work ... [w]hen [HMH] decides, in its sole and absolute discretion, that *public demand* for the 'work' no longer warrants its continued manufacture."[1]  Once HMH discontinues publication and manufacturing of the "work," it "**shall assign** the copyright and the rights to publish to [NAL]."

According to the Publishing Agreements, NAL has the right to audit HMH's royalty statements with one audit allowed per year.  HMH is required to provide NAL with a single Royalty Calculation Report on or before May 15 of each year that itemizes sales of the program from the entire prior year.  NAL must perform its audit within 120 days from the date that it receives a royalty statement from HMH.  If NAL performs an audit and finds a discrepancy, it is required to notify HMH within 120 days.  If no

---

[1]The Publishing Agreements contain a choice of law provision favoring Oklahoma law.

resolution can be reached, the parties are to mediate NAL's claim for additional royalties.

NAL has been allegedly unable to exercise its contractual audit right because HMH has provided two royalty reports for two consecutive six-month periods during each year. NAL cannot perform a single audit of both the first and second royalty reports within 120 days of receipt of each report.

NAL alleges that this audit provision has been waived by parties due to the consistent course of dealing bypassing mediation in favor of informal negotiations between the parties to reconcile royalty payments. NAL also alleges, in the alternative, that the parties agreed to an amendment of the Publishing Agreements in 2012 (the "2012 Amendment"). Through correspondence, emails, telephone conferences and meetings, the parties agreed that HMH would calculate royalties owed to NAL without deducting certain expenses from actual net sales; a 5% royalty would be paid on all Non-Electronic Use education materials and on all "Manipulatives;" in exchange for release from NAL relative to underpayment of royalties disputes prior to 2012, HMH would recalculate royalties for 2010 and 2011 in accordance with the aforementioned calculation provisions; and commencing in 2012, the parties would collaboratively work toward a "Master List" of values for all electronic and non-electronic educational materials in advance of sales to resolve their allocation dispute.

HMH partially performed the 2012 Amendment by (1) recalculating and paying royalties consistent with the amendments; and (2) agreeing that NAL is owed $236,925 based on recalculation of royalties for 2010 and 2011 pursuant to the 2012 Amendment.

Subsequently, HMH sought a global general release of any and all claims between the parties. NAL had not previously agreed to a general release of all of plaintiff's claims, and it refused to sign this proposed document. HMH then refused to comply with the terms of the 2012 Amendment.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff is obliged to amplify a claim with some factual allegations to allow the court to draw the reasonable inference that the defendant is liable for the alleged conduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Defendant argues that (1) plaintiff's claims for underpayment and failure to pay royalties and the parallel claims for declaratory judgment concerning the calculation royalties are barred by the audit provision of the Publishing Agreements; (2) the breach of contract claims are barred by the statute of limitations; (3) plaintiff has failed to state a plausible claim for breach of contract; and (4) the CUTPA claims are based only upon the alleged breach of contract.

### Audit Provision

Defendant argues that plaintiff has not complied with the audit provision's exclusive dispute resolution mechanism for disputes concerning royalties. Plaintiff counters that defendant has waived this provision based on the alleged course of dealing between the parties; and plaintiff asserts that the parties intended to amend the Publishing Agreements with the 2012 Amendment.

### Waiver

Under Oklahoma law, a waiver may be express or implicit. See Barringer v. Baptist Healthcare of Okla., 22 P.3d 695, 701 (Okla. 2001). The doctrine of implied waiver focuses on the intention of the party against whom the waiver is asserted and the burden of proof is on the party alleging waiver. Murphy Oil USA, Inc. v. Wood, 438 F.3d 1008, 1014 (10th Cir. 2006). An implied waiver may be established by action or conduct that warrants an inference of an intent to relinquish. Barringer, 22 P.3d at 701.

In this instance, the Court must construe most favorably to plaintiff the factual allegations relevant to the history of resolving royalty disputes without regard to the audit provisions and the recalculation and payment of the royalties. Accordingly, the Court finds that plaintiff has at least stated a cognizable claim of implied waiver of the contractual audit provisions.

### 2012 Amendment

Defendant asserts that the alleged 2012 Amendment to the Publishing Agreement is invalid absent a meeting of the minds; is not in writing as required by the Publishing Agreements; and violates the statute of frauds.

Oklahoma law requires that the "parties all agree upon the same thing in the

same sense." Beck v. Reynolds, 903 P.2d 317, 319 (Okla. 1995). Defendant argues that plaintiff has not established that the parties agreed on the terms of the 2012 Amendment; and further, that the Publishing Agreements require that any modification shall not "be valid or binding unless in writing and signed by the parties." Plaintiff has alleged that the "parties reached agreement" on the provisions of the 2012 Amendment but has not alleged that a signed writing exists to modify the existing agreement. However, plaintiff argues that it remains a question of fact whether the "anti-waiver" clause has actually been waived or modified by defendant's partial performance. Specifically, plaintiff points out that defendant paid royalties in accordance with the alleged 2012 Amendment terms without requiring any signed writing of the terms of the amended royalty calculation. Construing the facts most favorably to plaintiff for purposes of this ruling on this motion, the Court finds plaintiff has stated a plausible claim that the parties made an oral agreement to amend the Publishing Agreements and that defendant's partial performance constitutes a waiver of the "anti-waiver" clause.

     Defendant argues further that the alleged 2012 Amendment violates Oklahoma's statute of frauds, which requires that a contract providing for express dates beyond one year from execution be in writing. CTI Services LLC v. Haremza, 797 F. Supp. 2d 1257, 1260 (N.D. Okla. 2011). Plaintiff argues that the 2012 Amendment does not fall within the statute of frauds because it may be performed within one year. Plaintiff argues further that defendant's partial performance of the 2012 Amendment–the payment of the royalties for 2012 and NAL's release of under-payment claims prior to January 2010–removes the 2012 Amendment from the statute of frauds.

A court should void a contract under the statute of frauds only if there is a clear understanding of the parties that the contract would not be performed within one year. Krause v. Dresser Industries, Inc., 910 F.2d 674, 679 (10th Cir. 1990); Chalfant v. Tubb, 453 F. Supp. 2d 1308, 1322 (N.D. Okla. 2006).  At the same time, an oral agreement of an indefinite time for performance that may be performed within a year, even if "highly improbable," does not fall within the statute of frauds.  Municipal Gas Co. v. Gilkeson, 16 P.2d 247, 249 (Okla. 1932).

Plaintiff asserts that the Publishing Agreements fail to specify the length of the parties' relationship and provide defendant with "sole and absolute discretion" to terminate its publication of Larson's *Saxon Math*.  Thus, plaintiff submits that defendant's ability to terminate its publication of Larson's *Saxon Math* renders the contract performance possible within one year.

Defendant counters that the contract provides for a specific duration of the parties' relationship for longer than a year because the Publishing Agreements afford HMH an exclusive publishing right "during the full term of the copyright and all renewals thereof," which is the life of the author plus 70 years pursuant to 7 U.S.C. § 302. Defendant maintains that this provision does not represent a termination clause of the contractual relationship between the parties because it relates only to the manufacture of the product rather than the continuing sale of products already manufactured.

On this motion, the Court cannot determine the intent of the contractual provision at issue.  As all inferences of fact must be construed in favor of plaintiff, the Court finds that plaintiff has stated a plausible claim that the oral amendment can be performed

within one year and, thereby, falls outside of the statute of frauds.  The Court will leave plaintiff to its proof on summary judgment.

### Breach of Contract/Implied Covenant of Good Faith and Fair Dealing

Plaintiff alleges that HMH breached its contract based on constructive termination of the Publishing Agreements and violated the covenant of good faith and fair dealing that is implied in contracts under Oklahoma common law.  Wathor v. Mutual Assurance Adm'irs., Inc., 87 P.3d 559, 561 (Okla. 2004).  Defendant argues for dismissal on the basis of the five-year statute of limitations relevant to contract actions under Oklahoma law.  See Okla. Stat. Ann. Tit. 12, § 95(1).  Plaintiff counters that the Connecticut six-year statute of limitations applies.

Connecticut courts consider a statute of limitation to be procedural, and therefore, Connecticut federal courts apply Connecticut's statute of limitation to common law diversity actions commenced in Connecticut district court.  Doe No. 1 v. Knights of Columbus, 930 F. Supp. 2d 337, 353 (D. Conn. 2013).

Defendant points out that the Publishing Agreements executed in 1991, 1992, and 1993 provide a choice of law provision favoring Oklahoma law.  The Publishing Agreements state: "This Agreement in all matters and issues collateral thereto shall be governed by the laws of the State of Oklahoma."  Further, a January 2002 settlement agreement ("Settlement Agreement") regarding a royalty dispute between Saxon and Nancy Larson, Nancy A. Larson Corporation and NAL provides: "The last act making this Settlement Agreement effective shall take place, and shall be deemed to have taken place in Oklahoma (regardless of where the parties are physically located when they sign this Agreement), and the laws of Oklahoma, exclusive of Oklahoma's conflicts

laws, shall apply to the validity, construction, enforceability and efficacy of this Settings Agreement."[2]

Construing all inferences of fact in favor of plaintiff, the Court finds that the choice of law provisions are ambiguous relevant to the scope of their applicability. These choice of law provisions mandate application of Oklahoma substantive law but do not clearly preclude application of Connecticut's procedural law; further, the Settlement Agreement's more specific choice of law provision may be limited to that agreement. On this motion, the Court cannot determine the contractual intent of the parties. Accordingly, the Court will not dismiss the breach contract or the breach of the implied covenant of good faith and fair dealing on the ground of the statute of limitations.

<u>Failure to state a plausible breach of contract claim</u>

Plaintiff alleges that defendant has constructively breached the Publishing Agreements by failing to assign the copyright and rights to publish Larson's *Saxon Math* after it converted all of the Larson's *Saxon Math*'s customer base to HMH's other elementary math programs. Defendant counters that it is only required to "assign the copyright and right to publish" to plaintiff if and when it exercises its discretion to discontinue the publication and manufacture of the program. Defendant maintains that the clear contractual language and plaintiff's acknowledgment of HMH's continued sale

---

[2] As to effect on other agreements, the Settlement Agreement stated that "[e]xcept as expressly set forth in this Settlement Agreement, nothing herein is intended to alter or amend the Royalty Agreements, which shall remain in full force and effect according to their terms. When there is a conflict between this Settlement Agreement and the Royalty Agreements, the terms of this Settlement Agreement shall apply."

of the program is fatal to plaintiff's constructive termination claim.

Plaintiff has alleged that defendant has decided that it will no longer publish Larson's *Saxon Math* and that it has taken steps to suppress public demand as a pretext for its conversion of plaintiff's customer's to its other math products. The Court finds that plaintiff has stated a plausible breach of contract claim on the basis that defendant has failed to reassign the copyright to NAL after it actually discontinued manufacture and publication of the program or after it decided to terminate publication of the program and took steps to undermine its customer demand. Consideration of the merits of the claim is better suited to review on summary judgment.

CUTPA

Defendant argues that plaintiff's CUTPA claims cannot be sustained because its allegations are limited to defendant's alleged breach of contract.

CUTPA provides, in relevant part, that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). The Connecticut Supreme Court has adopted the following factors known as the "cigarette rule" to determine whether a trade practice is unfair or deceptive: "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statute, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors, or other businessmen." A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 215 (1990).

In order to prove that the practice is unfair, it is sufficient to meet only one of the criteria or to demonstrate that the practice meets all three criteria to a lesser degree. <u>Hartford Electric Supply Co. v. Allen-Bradley Co.</u>, 250 Conn. 334, 368 (1999).  Not every contractual breach of contract rises to the level of a CUTPA violation, and there must be some nexus with a public interest; some violation of a concept of what is fair; some immoral, unethical or oppressive business practice; or some practice that offends public policy.  <u>Gaynor v. Hi-Tech Homes</u>, 149 Conn. App. 267, 276 (2014).  Generally, courts have held that substantial aggravating circumstances sufficient to support CUTPA claims include fraudulent representations, fraudulent concealment, false claims and multiple breaches of contract.  <u>Building Solutions since 1977, LLC v. New Haven Housing Authority</u>, 2015 WL 1868107, *8 (Conn. Super.).

Plaintiff alleges that defendant falsely advised customers that plaintiff's programs did not comply with Common Core standards; made an effort to convert customers to HMH's programs rather than plaintiff's program; and implemented a plan to eliminate plaintiff's program.  These allegations may be construed to assert that defendant was engaged in making false representations and covertly terminated plaintiff's programs without reassigning the copyright to NAL; such allegations fall within the penumbra of unfair conduct and, thereby, state plausible claims of CUTPA violation.

## CONCLUSION

For the foregoing reasons, the Court DENIES the motion to dismiss [doc. #29].

Dated this 27th of May, 2015 in Bridgeport, Connecticut.

~~~~~~~~/s/~~~~~~~~~~~~~~~~~~~~~~
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE